UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLISON SNIPES,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, and ROBERT WILKIE, Secretary of the United States Department of Veterans Affairs,<br><br>    Defendants. | Case No. 18-cv-03259-TSH<br><br>**ORDER GRANTING MOTION TO COMPEL INDEPENDENT MENTAL EXAMINATION**<br><br>Re: Dkt. No. 74<br><br>*Redacted Version* |

## I. INTRODUCTION

In this Title VII employment discrimination case, the government moves to compel Plaintiff Allison Snipes to submit to an independent mental examination pursuant to Federal Rule of Civil Procedure 35, which provides that the Court may compel such an examination when a party places their mental condition "in controversy." ECF No. 74. Snipes filed an Opposition (ECF No. 80) and Defendants filed a Reply (ECF No. 81). The Court finds this matter suitable for disposition without oral argument and **VACATES** the April 2, 2020 hearing. *See* Civ. L.R. 7-1(b). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS** the government's motion for the following reasons.

## II. BACKGROUND

Snipes grew up in the Pentecostal faith and considers church and family the two most important aspects of her life. Third Am. Compl. ¶ 14, ECF No. 44. She alleges her former supervisor at the U.S. Department of Veterans Affairs, Elizabeth Turner-Nichols, often expressed to Snipes her contempt for religious people that did not follow the religious beliefs they professed to hold. *Id.* ¶ 19. Snipes alleges Turner-Nichols discovered she was having a romantic

relationship with a man in violation of the strict Pentecostal rules, summoned Snipes to her office, and ordered her to call her parents and "come clean," revealing all the intimate details of her romantic activities to her parents. *Id.* ¶ 20. She alleges Turner-Nichols discriminated against her on the basis of religion and sex, violated her privacy, and intentionally caused her emotional distress. *Id.* ¶ 19. Snipes alleges she has suffered mental and psychological injuries stemming from this phone call and seeks emotional distress damages for each of her six causes of action. *Id.* ¶¶ 34, 40, 46, 54, 62 67. She is claiming $1 million in mental and emotional distress damages. Bernardoni Decl., Ex. C (Response to Interrog. No. 4), ECF No. 75. She testified at her deposition that she ███████████████ as a result of the events alleged in her complaint, ███████████████████████████████████████████████████████. *Id.*, Ex. A (Pl.'s Depo.) at 219:8-220:3; *see also id.*, Ex. B (SNIPES000663-664, Zora Kolkey Treatment Summary for Allison Snipes). Snipes further testified at her deposition that she ███████████████████████████████████████████████████████████████████████████████████████████████████████. *Id.*, Ex. A at 232:4-233:12. A September 8, 2019 treatment summary from her current therapist indicates Snipes suffers from ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *Id.*, Ex. B (SNIPES000663-664).

The government now moves to compel Snipes's mental examination, arguing she has placed her mental condition in controversy by asserting a claim for intentional infliction of emotional distress, claiming $1 million in damages, testifying that she suffers ███████ ██████████████████████████████████████████████, and possibly offering expert testimony in support of her intentional infliction of emotional distress claim. Mot. at 5. The government further argues it is not possible to obtain the desired information by other means because a deposition "is insufficient to understand, from a medical perspective, the nature, cause, extent, expected duration, and appropriate treatment of plaintiff's claimed emotional injuries." *Id.* at 8.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 35 provides that, for good cause shown, the court "may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a). Courts construe Rule 35 liberally in favor of granting discovery. *Schlagenhauf v. Holder*, 379 U.S. 104, 114-15 (1964). To justify a mental examination under Rule 35, the government must demonstrate: (1) Snipes placed her mental condition "in controversy," and (2) "good cause" exists for the examination. *Id.* at 118-19.

## IV. DISCUSSION

### A. Condition in Controversy

A plaintiff's mental or physical condition is "in controversy" when the condition is the subject of the litigation. *See Haqq v. Stanford Hospital & Clinics*, 2007 WL 1593224, at *1 (N.D. Cal. June 1, 2007) (citation omitted). "Courts will order plaintiffs to undergo mental examinations where the cases involve, in addition to a claim of emotional distress, one or more of the following: (1) a cause of action for intentional or negligent infliction of emotional distress; (2) an allegation of specific mental or psychiatric injury or disorder; (3) a claim of unusually severe emotional distress; (4) the plaintiff's offer of expert testimony to support a claim of emotional distress; and/or (5) the plaintiff's concession that his or her mental condition is 'in controversy' within the meaning of Rule 35(a)." *Turner v. Imperial Stores*, 161 F.R.D. 89, 95 (S.D. Cal. 1995)

Here, Snipes seeks recovery for emotional distress damages for each of her six causes of action. Third Am. Compl. ¶¶ 34 (Title VII-Sex Discrimination, claiming Snipes "has suffered, and will continue to suffer, mental and psychological damages in the form of extreme and enduring worry, humiliation, embarrassment, mental anguish, and emotional distress"), 40 (Title VII-Religious Discrimination, claiming the same emotional distress damages), 46 (Title VII-Retaliation, claiming the same emotional distress damages), 54 (Title VII-Hostile Work Environment, claiming the same emotional distress damages), 62 (Invasion of Privacy, claiming the same emotional distress damages), and 67 (Intentional Inflict ion of Emotional Distress, claiming the same emotional distress damages). In addition, the Court finds this case involves at

3

least two of the *Turner* elements.

   1.   **Claim for Intentional Infliction of Emotional Distress**

Because Snipes brings a specific claim for intentional infliction of emotional distress, the Court finds she alleges more than "garden variety" emotional distress and the first *Turner* element is therefore met. *See Franco v. Bos. Sci. Corp.*, 2006 WL 3065580, at *1 (N.D. Cal. Oct. 27, 2006) ("courts have held that a separate tort claim for emotional distress places the plaintiff's mental condition in controversy") (citing *Turner*, 161 F.R.D. at 95); *Minnard v. Rotech Healthcare Inc.*, 2008 WL 150502, at *3 (E.D. Cal. Jan. 15, 2008) ("the addition of a specific 'intentional infliction of emotional distress' claim is a factor pointing to the necessity for [a Rule 35] exam."). In her opposition, Snipes states she will stipulate to withdraw that claim to resolve this dispute. Opp'n at 4. However, she has not yet dismissed that claim or sought leave to amend her pleadings, and any contention that an independent mental examination is not appropriate on this ground is therefore premature.

   2.   **An Allegation of a Specific Mental or Psychiatric Injury or Disorder**

As to the second element, Snipes argues she would "stipulate not to identify any diagnosis or disorder arising from emotional distress, dispensing with the second prong." *Id.* at 4. However, an independent mental examination is also warranted where the plaintiff identifies specific *injuries* caused by the defendant's conduct. *Turner*, 161 F.R.D. at 95; *Greenhorn v. Marriott Int'l, Inc.*, 216 F.R.D. 649, 651 (D. Kan. 2003) (finding plaintiff's mental condition in controversy when plaintiff alleged specific injuries such as suicidal ideation, insomnia, severe depression, avoidance, withdrawal, suspiciousness, social discomfort, low self-esteem, and resentfulness); *Varfolomeeva v. United States*, 2017 U.S. Dist. LEXIS 201100, at *4-5 (E.D. Cal. Dec. 6, 2017) (finding plaintiff's mental condition in controversy when plaintiff alleged specific injuries including depression, post-traumatic stress disorder, anxiety, suicidal ideation, and a phobia of walking on the street); *Preston v. City of Oakland*, 2015 WL 12976100, at *2 (N.D. Cal. Jan. 28, 2015) (finding plaintiff's symptoms were not garden variety where she claimed to suffer from insomnia, anxiety, headaches, and decreased social activity in her interrogatory responses); *Dornell v. City of San Mateo*, 2013 WL 5443036, at *4 (N.D. Cal. Sept. 30, 2013) (claim for continuing emotional

4

distress resulting in anxiety, high blood pressure, chest pain, sleeplessness, weight gain, inability to focus and loss of interest in daily life activities and hobbies, was not "garden-variety" emotional distress); *Tamburri v. SunTrust Mortgage Inc.*, 2013 WL 942499, at *3-4 (N.D. Cal. Mar. 11, 2013) (alleged suicidal ideation, paranoia, chest pains, blinding and debilitating headaches that are "frightening in their intensity," multiple cracked teeth from jaw grinding, and loss of mental clarity constitute severe symptoms and not "garden-variety"); *Ayat v. Societe Air France*, 2007 WL 1120358, at *4 (N.D. Cal. Apr. 16, 2007) (claim of loss of past and future earning capacity, fear and terror, emotional distress, discomfort, anxiety, loss of enjoyment of life, past and future pain and suffering, depression, post-traumatic stress disorder, and the loss of ability to lead a normal and enjoyable life seemed to indicate severe emotional distress).

Here, Snipes testified that she suffers from ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. Bernardoni Decl., Exs. A & B. Her treating therapist also has indicated she suffers from ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ *Id.*, Ex. B. Snipes states she will stipulate to not rely on her treating therapist's notes as evidence of her damages, Opp'n at 2, but she does not address the other evidence the government presents. Regardless, even if she does not intend to introduce these alleged psychiatric disorders to the fact finder, the government has the right to do so, and they are therefore still "in controversy." As the government points out, these claimed disorders could be relevant to resolve contested issues such as causation. Reply at 4. Under these circumstances, the "specific mental or psychiatric injury or disorder" prong of the in controversy test is satisfied, even if Snipes eventually withdraws her intentional infliction of emotional distress claim.

Further, Snipes is claiming $1 million in mental and emotional distress damages. While the amount of the emotional distress damages sought by a plaintiff is also not by itself dispositive of the issue presented, *see Turner*, 161 F.R.D. at 97 (a claim for damages in excess of $1 million for "humiliation, mental anguish, and emotional distress" does not, without more, warrant an independent mental examination), it is still a factor to consider when coupled with alleged

emotional distress symptoms. *Preston*, 2015 WL 12976100, at *2-3 ("While plaintiff's alleged emotional distress symptoms in this case are not identical to those alleged in the cases cited above and appear to be less severe, it is not clear that they are 'garden-variety,' especially given plaintiff's claim of $1 million in general damages.").

Thus, the Court finds this element is satisfied.

### 3. A Claim of Unusually Severe Emotional Distress

Third, the Court finds Snipes's claimed emotional distress is not mere "garden variety"' because her complaint repeatedly asserts she "has suffered, and will continue to suffer, mental and psychological damages in the form of extreme and enduring worry, humiliation, embarrassment, mental anguish, and emotional distress." *See* Third Am. Compl. ¶¶ 34, 40, 46, 54, 62, 67. She also testified that she suffers from ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Bernardoni Decl., Exs. A & B. Her treating therapist has indicated she suffers from ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*, Ex. B. As noted above, district courts have repeatedly found that symptoms similar to those alleged by Snipes justify a mental examination. *See Greenhorn*, 216 F.R.D. at 651; *Varfolomeeva*, 2017 U.S. Dist. LEXIS 201100, at *4-5; *Preston*, 2015 WL 12976100, at *2; *Dornell*, 2013 WL 5443036, at *4; *Tamburri*, 2013 WL 942499, at *3-4; *Ayat*, 2007 WL 1120358, at *4. This element is also satisfied.

### 4. A Plaintiff's Offer of Expert Testimony to Support a Claim of Emotional Distress;

Although expert disclosures have not yet occurred, the government argues this element supports an examination because Snipes has retained her therapist as an expert in this case and her therapist attended certain depositions as a result. Mot. at 7. Snipes does not deny that her therapist has been retained but states she will stipulate to "not call experts to testify in support of [her] emotional distress damages." Opp'n at 1-2. Accordingly, because Snipes will not offer expert testimony to support a claim of emotional distress, this element does not support an examination.

### 5. Plaintiff's Concession

As Snipes has not conceded that her mental condition is in controversy within the meaning of Rule 35(a), this element does not support an examination.

### 6. Summary

At this stage in the proceedings, the first three *Turner* elements support an examination. Even if Snipes were to dismiss her intentional infliction of emotional distress claim, the second and third elements would still support an examination. Thus, the "in controversy" prong is met. *See Mandujano v. Geithner*, 2011 WL 825728, at *2 (N.D. Cal. Mar. 7, 2011) (stating that courts "will order a mental examination when" a case involves "**one or more**" of the five "in controversy prongs) (emphasis added).

## B. Good Cause Exists to Permit the Examination

"Good cause" generally requires a showing of specific facts justifying discovery. *Haqq*, 2007 WL 1593224, at *2. Factors that courts have considered include the possibility of obtaining desired information by other means, whether plaintiff plans to prove her claim through testimony of expert witnesses, whether the desired materials are relevant, and whether plaintiff is claiming ongoing emotional distress. *Gavin v. Hilton Worldwide, Inc.*, 291 F.R.D. 161, 165 (N.D. Cal. 2013) (citing *Haqq*, 2007 WL 1593224, at *1).

Here, the Court finds good cause exists because it is not possible to obtain the desired information by other means. First, a key question in this case is causation, and an independent mental examination is necessary to assess whether the government caused Snipes's claimed emotional distress. Snipes contends that, as a result of animus for religious hypocrites and because of sex discrimination, Turner-Nichols forced her to disclose her "secret" relationship status to her parents and that her emotional distress stems from this incident. In contrast, the government states it intends to elicit testimony from Turner-Nichols that Snipes voluntarily approached her before the June 2016 phone call, told Turner-Nichols that she was suicidal, agreed to call her parents for emotional support, and then voluntarily disclosed her relationship status to her parents once they were on the phone. Reply at 6. The government also contends Snipes's ▮▮▮▮ is relevant to causation because "it is likely that ▮▮▮▮

7

1  ████████████████████████████████████████, which could cause plaintiff significant
2  emotional distress completely distinct from anything the government allegedly did in this case."
3  Mot. at 3 n.1; Reply at 6.

    Second, Snipes's prior discovery responses have shown the need for a further inquiry into her mental and emotional health. On August 16, 2019, the government served Snipes with its first set of requests for production, which sought, inter alia, "[a]ll documents and tangible things, including without limitation all mental health or other medical records, that provide the factual basis for or that refer or relate to any compensatory damages or emotional distress damages you are claiming in this case." Bernardoni Decl., Ex. D (Def.'s Reqs. for Produc., Set One). Snipes did not produce documents responsive to this request until one day before her October 4, 2019 deposition, when she produced incomplete and redacted mental health records. Bernardoni Decl. ¶ 6. Because the government did not have timely and complete access to her mental health records for her deposition, it was unable to conduct a complete inquiry into those issues.

    Third, even if the Court were to order a further deposition, Snipes's testimony demonstrates that her claimed damages are sufficiently serious (including ████████████ ████████████████████████████) such that a deposition is insufficient to understand, from a medical perspective, the nature, cause, extent, expected duration, and appropriate treatment of her claimed emotional injuries. *See Greenhorn*, 216 F.R.D. at 652 (good cause established where nature of alleged injuries are sufficiently serious that "the average person might not be able to evaluate properly the nature, extent, and cause of the injuries plaintiff claims to have sustained").

    Fourth, Snipes ████████████████████████, and she testified that her ███████ ████████████████████████████. *Id.*, Ex. A. Snipes has offered to limit her claim for emotional distress damages to the time period up until May 2019. Opp'n at 2. However, it is unclear how a unilateral time limit chosen by Snipes overcomes the fact that she claims the events at issue in this lawsuit are the only cause of stress in her life while at the same time not allowing the government to conduct discovery to ascertain if those assertions are true. *See Varfolomeeva*, 2017 U.S. Dist. LEXIS 201100, at *5 ("By claiming that such mental conditions

8

were caused by the underlying event, plaintiff has placed her mental condition in controversy."); *Ragge v. MCA/Universal Studios*, 165 F.R.D. 605, 608 (C.D. Cal. 1995) ("One of the purposes of Rule 35 is to 'level the playing field' between parties in cases in which a party's physical or mental condition is in issue."). When a court grants a request for an independent mental examination, it is to preserve the "equal footing of the parties to evaluate the plaintiff's mental state." *Tomlin v. Holecek*, 150 F.R.D. 628, 633 (D. Minn. 1993).

In short, the Court finds the results of a mental examination would be relevant to the government's case, especially with respect to testing the cause, severity, and extent of Snipes's purported emotional distress injuries. Thus, the Court finds good cause exists to order a mental examination.

### C. Scope of the Examination

An order for a physical or mental examination must contain the following: (1) the designation of the examiner; (2) the time and place of the examination; and (3) the manner, conditions, and scope of the examination. Fed. R. Civ. P. 35(a)(2)(B). The government proposes a psychological test conducted by Amanda Gregory, Ph.D., which she estimates would take six to nine hours, and a psychiatric examination conducted by Renee Binder, M.D., which she estimates would take up to four hours. Mot. at 10-11; Binder Decl. ¶ 8, ECF No. 76; Gregory Decl. ¶ 6, ECF No. 77.

If the Court were to permit an examination, Snipes does not dispute the government's entitlement to both a psychological and a psychiatric examination. Opp'n at 6. However, she argues that the Court should limit the scope to no more than six hours because "[i]f the Court accepts Plaintiff's withdrawal of her IIED cause of action, the amount of inquiry into Plaintiff's developmental history, psychiatric history, sexual history, or physical disorders should be minimal if any." *Id.* But even if Snipes were to dismiss her intentional infliction of emotional distress claim, her invasion of privacy claim remains, with $1 million in claimed mental and emotional distress damages, and each one of her remaining claims assert emotional distress damages. Further, as discussed above, her claimed mental and emotional distress are still unusually severe, including ▮

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■. The Court finds Snipes has failed to show the examiners should not be allowed to exercise discretion in the manner and means of conducting their examination, including the amount of time Drs. Binder and Gregory stated they need to conduct an adequate examination. *See Ragge*, 165 F.R.D. at 609 (Courts give preference to allowing the examiner to exercise discretion in the manner and means by which the examination is conducted, provided that it is not an improper examination).

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** the government's motion to compel an independent mental examination as follows:

1. Snipes shall appear for and submit to psychological testing and examination before Amanda Gregory, Ph.D., represented by the government to be a duly licensed psychologist. The testing shall take place on April 10, 2020, commencing at 9:00 a.m. at 100 Bush Street, Suite 918, San Francisco, CA 94104. Dr. Gregory is permitted to conduct recognized and appropriate psychological testing, at her discretion. The specific tests to be administered will be revealed at the time of the examination. The testing will last up to nine hours, including an adequate lunch break and rest breaks.

2. Snipes shall appear for and submit to a psychiatric examination before Renee Binder, M.D., represented by the government to be a duly licensed psychiatrist. The testing shall take place on April 17, 2020, commencing at 12:00 p.m. at 401 Parnassus Avenue, Room 258, San Francisco, CA 94143. The testing will last up to four hours.

3. Snipes shall attend both examinations alone, without counsel or any other third party.

4. Drs. Gregory and Binder will make audio recordings of their respective examinations, and Snipes may make an audio recording as well.

5. Subject to the protective order, the government shall produce to Snipes's counsel, or other designee, the written reports of Drs. Gregory and Binder and any related reports of psychological testing whether done by computer scoring, hand scoring, or anything else. However, the government need not produce examination materials that are protected by trade

10

secret law and ethical obligations of psychologists.

6. Should it become necessary to reschedule the examinations due to the COVID-19 outbreak and related shelter in place orders, the parties may file a stipulation.

**IT IS SO ORDERED.**

Dated: March 18, 2020

THOMAS S. HIXSON
United States Magistrate Judge